POTTS v. LAMBIE.

(Supreme Court, Appellate Division, First Department. July 10, 1913.)

1. FRAUD (§ 4*)—LIABILITY—ESSENTIALS.

In an action for damages for fraud in inducing plaintiff to purchase corporate stock, where the fraud consisted in an alleged falsification of the corporation's books, proof that defendant intentionally falsified the books is essential to recovery.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. § 2; Dec. Dig. § 4.*]

2. FRAUD (§ 58*)—ACTIONS—EVIDENCE—SUFFICIENCY.

In an action to recover damages for fraud in inducing plaintiff to purchase shares of stock, evidence *held* insufficient to show that defendant falsified the books of the corporation or that they were in fact false.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. §§ 55–59; Dec. Dig. § 58.*]

Appeal from Trial Term, New York County.

Action by Frank Potts against J. Edward Lambie. From a judgment for plaintiff and an order denying his motion for new trial, defendant appeals. Reversed and remanded.

See, also, 144 App. Div. 898, 129 N. Y. Supp. 1143.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Isaac N. Miller, of New York City, for appellant.

Vincent P. Donihee, of New York City, for respondent.

McLAUGHLIN, J. This appeal is from a judgment in favor of the plaintiff entered upon a verdict of a jury and from an order denying a motion for a new trial.

The action is to recover damages for fraud in inducing plaintiff to purchase from defendant 60 shares of the capital stock of the New York Export & Import Company. The allegations of fraud, as set forth in the complaint, have already been considered and passed upon by this court on an appeal from an interlocutory judgment overruling a demurrer to a defense. Potts v. Lambie, 138 App. Div. 144, 122 N. Y. Supp. 935.

At the trial it appeared that in November, 1903, the defendant was the president, principal stockholder, and general manager of the Export & Import Company; that the plaintiff had applied for a position with the company, and had several conferences with the defendant in reference thereto; that the defendant informed him it was his practice to require the principal employés of the company to become stockholders, and as a result of their negotiations it was finally agreed that the plaintiff should be employed at a salary of $3,000 a year, of which $500 a year should be retained and applied to the purchase of stock until plaintiff was in a position to purchase a substantial amount; that in August, 1904, plaintiff was in a position to purchase a substantial amount and then bought from the defendant 60 shares at par, paying $6,000 therefor; that thereafter he received his full salary of $3,000 a year, and it is to recover damages for the alleged

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

fraudulent representations in inducing the purchase of this stock that this action is brought.

The fraudulent representations alleged in the complaint are that the defendant falsely and fraudulently represented that:

"The said corporation had large and substantial assets; that the books of the company showed that the company was sound; and that said corporation had earned and declared and paid dividends of ten per cent. (10%) on its common stock in each of the years 1902 and 1903."

The evidence utterly failed to establish that these statements were false, or that the plaintiff had any cause of action whatever against the defendant. It clearly appears that the corporation did have large and substantial assets at the time the representation was made, that the books showed that the company was sound, and that it had declared and paid 10 per cent. dividends on its common stock in the years 1902 and 1903. Practically the only claim now made is that it was at the time the purchase was made actually insolvent, although a large surplus was shown. The plaintiff testified that statements showing the condition of the company for 1903 and 1904 up to July were shown to him by the defendant at the time he purchased the stock. It is not claimed that these statements were not accurate transcripts from the books of the company, so that in reality the only charge against the defendant is that he falsified the books of the company or fraudulently represented them to be correct, knowing they were false.

The company was engaged in shipping American made goods to various points in India. The amount expended in establishing this business, or these branches of the business, was carried upon the books as an asset called "the foreign account," amounting to some $28,000, and this is the principal item which it is claimed was improperly included among the assets. In estimating the goods on hand at the various branches the amount at which the goods had been billed at a slight advance over the cost price in New York was taken as a basis and the sales during the year and 10 per cent. for depreciation deducted. The inventories submitted by the branch offices were not considered. There was also an item of long standing called "the Oriental consignment account," which apparently was an adjustment of the 10 per cent. allowance for depreciation. This was carried as an asset, and in 1904 amounted to about $8,000, when it was written off. The amounts advanced to traveling salesmen during the year were also included as an asset, though, of course, most of it had been expended, but it was not written off until the actual expenditures had been definitely ascertained.

[1, 2] Under this method of bookkeeping it must be conceded the books of the company were inaccurate, but under the facts and circumstances shown it would have been impossible to have kept the books absolutely accurate at all times, and before the defendant can be held liable for fraud he must be shown to have been guilty of fraud, viz., that he intentionally deceived the plaintiff as to the financial condition of the company. The proof shows just the opposite. One of the plaintiff's own witnesses testified that the so-called "for-

eign account" might properly have been included as an asset if it had been called good will, and with this amount included the plaintiff's stock, on his own showing, would have been worth par or very nearly par at the very time he purchased it. At that time the business of the company was increasing, and it thereafter continued to increase until 1907, when it began to decrease, until the company became bankrupt in 1909.

The plaintiff had been in the employ of the company over nine months at the time he purchased the stock; and, although he testified that he did not have access to the books or knowledge of their contents, there is no evidence that any attempt was made to conceal from him the true condition of the company; on the other hand, in September, 1905, he was sent on a trip to visit the various branches of the company in India, where he was able to examine thoroughly its affairs. Shortly after his return he was elected a director and made the secretary of the company, which offices he held until it was adjudicated a bankrupt. The defendant severed his active connection with the company in 1906. No change apparently was made in the method of bookkeeping, and the plaintiff, although he talked with the defendant as late as October, 1907, never, so far as appears, claimed that he had been defrauded in the purchase of the stock until the commencement of this action. The case is absolutely barren of any evidence showing, or tending to show, a fraudulent intent on the part of the defendant. To say that the books of the company were kept dishonestly is to accuse the plaintiff and the other officers of the same dishonesty, and this without any basis for the assertion.

Not only this, but it is exceedingly doubtful whether the representations made, or the financial statements shown to the plaintiff, were in any respect the inducing cause of his investment. But, assuming that they were, the only conclusion possible from the evidence is that there had been no intentional falsification of the books of the company, and that the defendant at that time honestly believed, as the plaintiff did then and for some years thereafter, that the company was as prosperous as the books showed it to be.

The judgment and order appealed from must therefore be reversed, and a new trial ordered, with costs to appellant to abide event. All concur.